Filed 11/20/23  Moreira v. New Rez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ISRAEL MOREIRA et al., | D081023 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2020-00045432-CU-OR-CTL) |
| NEW REZ, LLC et al. | |
| Defendants and Respondents. | |


APPEAL from a judgment and an order of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Appeal dismissed; order affirmed.

Law Offices of Ronald H. Freshman and Ronald H. Freshman for Appellants Israel Moreira and Margarita Garcia Moreira.

Steele and John C. Steele for Respondent MTC Financial Inc.

Klinedinst, Ian A. Rambarran, Robert M. Shaughnessy, Jonathan C. Cahill, and Bryan R. Delgado for Respondents Newrez, LLC and Mortgage Electronic Registration System, Inc.

No appearance for Respondent New Residential Mortgage, LLC.

# I

# INTRODUCTION

Borrowers Israel Moreira and Margarita Garcia Moreira appeal from an order sustaining a demurrer to their civil complaint, without leave to amend, and dismissing their case against Mortgage Electronic Registration Systems, Inc. (MERS), New Residential Mortgage, LLC (New Residential), NewRez, LLC dba Shellpoint Mortgage Servicing (Shellpoint), and MTC Financial Inc. dba Trustee Corps (Trustee Corps)—entities that have at times claimed an interest in the Moreiras' debt. The Moreiras also appeal from an order denying their motion to vacate the dismissal order under Code of Civil Procedure section 473.

Our court does not have appellate jurisdiction to review the dismissal order because the Moreiras did not file a timely notice of appeal from that order. Thus, the Moreiras' appeal from the dismissal order is dismissed as untimely. As for the order denying the motion to vacate, the trial court properly exercised its discretion in denying vacatur after finding that the dismissal order was not caused by any mistake or inadvertence of the Moreiras' legal counsel, Ronald H. Freshman. Therefore, we affirm the order denying the motion to vacate.

# II

# BACKGROUND

A. *Factual Background*

The following background is taken from the allegations of the operative complaint and the exhibits attached thereto, which we assume are true under the standard of review applicable to our review of a ruling on a demurrer. (*LeBrun v. CBS Television Studios, Inc.* (2021) 68 Cal.App.5th 199, 202.)

2

On November 7, 2006, the Moreiras took out a loan from Countrywide Home Loans, Inc. (Countrywide) in the amount of $410,000.00. The promissory note for the loan was secured by a lien on the Moreiras' residence pursuant to a deed of trust. The deed of trust identified Countrywide as the lender, Recontrust Company, N.A. as the trustee, and MERS as the beneficiary, "solely as a nominee for [the] [l]ender and [the] [l]ender's successors and assigns."[1]

According to the complaint, Countrywide sold the note to Federal National Mortgage Association (Fannie Mae) on or about December 15, 2006. Thereafter, Fannie Mae allegedly resold the note to "investors" whose identities were "concealed" from the Moreiras.

Notwithstanding the supposed sale of the note to Fannie Mae, MERS executed an assignment of deed of trust, dated May 3, 2012, and recorded on May 9, 2012, which stated that MERS was assigning its interest in the deed of trust to Bank of America, N.A. (BANA).

BANA executed an assignment of deed of trust, dated June 5, 2013, and recorded on September 6, 2013, which ostensibly assigned its interest in the deed of trust to Green Tree Servicing, LLC, an entity that merged with, or was purchased by, Ditech Financial, LLC (hereafter, we will refer to both Green Tree Servicing, LLC and Ditech Financial, LLC as Ditech).

Ditech executed a substitution of trustee, dated July 17, 2014, and recorded on July 24, 2014, which claimed to substitute Trustee Corps as the trustee under the deed of trust. Trustee Corps then executed a notice of default, dated July 22, 2014, and recorded on July 24, 2014. The notice of

---

[1] "A 'nominee' is a person or entity designated to act for another in a limited role—in effect, an agent." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 270, disapproved on another point of law by *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13 (*Yvanova*).)

default stated the Moreiras were past due in their loan payments in the amount of $50,231.65.  At some point thereafter, the notice of default was rescinded.

Ditech executed another assignment of deed of trust, dated and recorded on January 17, 2020, which purported to assign Ditech's interest in the deed of trust to New Residential.

Finally, we take notice of an assignment of deed of trust, dated and recorded on June 17, 2021, and included in the record, which replaces New Residential with Shellpoint as the deed of trust beneficiary.[2]  (Evid. Code, § 459, subd. (a); *Yvanova, supra*, 62 Cal.4th at p. 924, fn. 1.)

B. *Procedural Background*

1. *The Complaint*

On December 10, 2020, the Moreiras filed the present lawsuit against MERS, Shellpoint, Trustee Corps, New Residential, and unnamed Doe defendants.  They filed the operative verified first amended complaint on June 28, 2021.

The operative complaint alleged that Countrywide sold the Moreiras' promissory note to Fannie Mae in December 2006, which rendered void all of the deed of trust assignments described above.  The complaint alleged the substitution of trustee and the notice of default were void due to the sale of the note to Fannie Mae as well.  Further, the complaint argued the notices of deed of trust assignments, the substitution of trustee, and the notice of default contained false or misleading representations insofar as they stated

---

[2]    The trial court took judicial notice of the assignment of trust substituting Shellpoint as the beneficiary under the deed of trust.  It also took judicial notice of the rescission of the notice of default, which was dated August 15, 2019, and recorded on August 19, 2019.

4

the alleged assignees had beneficial or transferable interests in the Moreiras' debt (since that debt was sold to Fannie Mae and then resold to "investors").

Based on these allegations, the complaint asserted causes of action for: (1) declaratory relief (all defendants); (2) intentional misrepresentation (MERS, BANA, and New Residential); (3) cancellation of instruments (New Residential, Shellpoint, and BANA); (4) violations of Civil Code section 2924.17 (New Residential, Shellpoint, and BANA); (5) violations of Civil Code section 2924 (Shellpoint, Trustee Corps, and New Residential); (6) slander of title (New Residential); (7) violation of the Unfair Competition Law (all defendants); and (8) quiet title (New Residential and BANA). It sought a declaration the defendants had no interest in the Moreiras' loan, the promissory note, or the deed of trust; an order cancelling the deed of trust assignments and the substitution of trustee; an order quieting title in favor of the Moreiras; an injunction against future nonjudicial foreclosures; and damages.

2. *The Demurrer Proceedings*

On July 22, 2021, MERS, Shellpoint, and New Residential demurred to the operative complaint. They argued the collateral estoppel doctrine barred the complaint in its entirety. According to the defendants, the Moreiras petitioned for Chapter 13 bankruptcy in 2017 (*In re Israel R. Moreira,* Bankruptcy No. 17-04352-LT13), and Ditech (the claimed beneficiary under the deed of trust at the time) filed a proof of claim alleging $159,549.62 in

5

prepetition arrearages.[3] The Moreiras objected to the claim of interest. Thereafter, Ditech moved for summary judgment. The Moreiras opposed, arguing there was a genuine issue of material fact as to whether Ditech could enforce the promissory note because, according to the Moreiras, "none of the creditors in the recorded line of title on the [deed of trust] owned the Note; rather ... it [was] owned by Fannie Mae."

The bankruptcy court rejected this argument and entered summary judgment for Ditech. In relevant part, it found: "Ditech filed a timely proof of claim supported by all required documentation; it provide[d] evidence that the Note was signed by the [Moreiras], that the Note was endorsed in blank, that the [deed of trust] was executed by the [Moreiras] in favor of Countrywide, that the [deed of trust] was assigned from Countrywide to Bank of America, through execution by MERS, and from Bank of America to Green Tree, and that Green Tree merged ... to form Ditech Financial LLC. ... [¶] ... Ditech has established that the [deed of trust] has been properly assigned from the original lender through to Ditech. It has also established that Ditech has physical possession of the Note endorsed in blank. Thus, Ditech has established that it is the 'holder' of the Note entitled to enforce it .... [The] opposition to the Motion for Summary Judgment is long and rambling. However, it distills down to ... [an assertion that] the true owner of the Note is Fannie Mae. ... [¶] ... [¶] [The Moreiras'] 'evidence' is screenshots from a website stating that Fannie Mae 'owns your loan.' ... [This] 'evidence'

---

[3] "A proof of claim is a written statement executed by a creditor or the creditor's authorized agent stating, inter alia, the amount the creditor claims is owed to it by the debtor. [Citation.] When properly executed and filed with a bankruptcy court, the claim is automatically allowed unless objected to by a party-in-interest." (*Volkswagen of America, Inc. v. Superior Court* (2006) 139 Cal.App.4th 1481, 1493, fn. 10.)

does not rise to the level that would refute the evidence provided in support of the [proof of claim] and [the] Motion for Summary Judgment."[4]

In addition to asserting a collateral estoppel defense, the demurring defendants contended the Moreiras lacked standing to challenge the deed of trust assignments—and to pursue their causes of action—because they were not parties to the assignments and their residence was not subject to a pending or threatened foreclosure sale. They argued the claims were time-barred because the Moreiras were aware, or should have been aware, the first and second assignments were void when they were recorded in 2012 and 2013. Furthermore, the defendants asserted various claim-specific arguments warranting dismissal. The demurring defendants also filed a proposed order dismissing the operative complaint with prejudice. Trustee Corps joined the demurrer and, in its filing, urged dismissal of the Moreiras' claims for additional reasons unique to Trustee Corps.

The Moreiras filed an untimely opposition to the demurrer. In their late-filed opposition, the Moreiras asserted they were not estopped from disputing the chain of assignments concerning the deed of trust because certain "evidence ha[d] come to light" proving the bankruptcy court's summary judgment order was incorrect. They argued their causes of action were timely because the defendants intentionally concealed their misdeeds, thus tolling the applicable statutes of limitations. Further, they responded to

---

[4]    The defendants also noted that the Moreiras filed and dismissed two prior lawsuits against Ditech and Trustee Corps concerning their loan, but the defendants made no argument that these lawsuits had any estoppel effect. The Moreiras voluntarily dismissed both of the prior lawsuits after suffering adverse or partially adverse demurrer rulings. (*Moreira v. MTC Financial Services, Inc., et al.*, Case No. 37-2015-00032711-CU-OR-CTL, San Diego Superior Court; *Moreira v. Ditech Financial LLC*, Case No. 37-2017-00025532-CU-OR-CTL, San Diego Superior Court).

a handful—though far from all—of the claim-specific arguments raised in the demurrer.

On January 28, 2022, the trial court issued a signed minute order sustaining the demurrer without leave to amend and dismissing the case in its entirety (hereafter, the January dismissal order). The court found the Moreiras were collaterally estopped from relitigating the validity of the recorded deed of trust assignments—an issue that formed the basis for all of their claims. It also found the Moreiras did not have standing to pursue their causes of action because no foreclosure sale had occurred. The court found the causes of action failed for numerous claim-specific reasons as well. Though the minute order sustained the demurrer without leave to amend, it stated, without elaboration, that the dismissal was "without prejudice."

On February 3, 2022, MERS, Shellpoint, and New Residential served the Moreiras' counsel with a notice of entry of the January dismissal order.

On February 17, 2022, the Moreiras timely moved to vacate the January dismissal order under the mandatory relief provisions of Code of Civil Procedure section 473. They argued vacatur was required because their attorney's mistake or inadvertence caused them to file an untimely opposition to the demurrer. Together with their motion, the Moreiras filed a declaration from their counsel, Ronald H. Freshman, who averred that his paralegal had calendared the due date for the Moreiras' opposition to the demurrer incorrectly, which caused the Moreiras to miss their filing deadline.

On July 29, 2022, the court denied the Moreiras' motion to vacate. The court found vacatur was not warranted because the court "did not sustain the demurrer based on the lack of [an] [o]pposition," and the Moreiras' counsel had appeared at the demurrer hearing and presented substantive arguments on behalf of his clients.

8

That same day, the court issued a nunc proc tunc order amending the January dismissal order. It replaced the sentence, "The Court orders the entire action dismissed without prejudice," with the sentence, "The Court orders the entire action dismissed **WITH** prejudice." The court clerk served the parties with the nunc pro tunc order on August 1, 2022.

On August 18, 2022, the Moreiras filed a notice of appeal, which included as attachments both the January dismissal order and the order denying the motion to vacate.

## III

## DISCUSSION[5]

A. *Appellate Jurisdiction*

At the outset, we must decide whether our court has appellate jurisdiction to review the January dismissal order and the order denying the Moreiras' motion to vacate. We have jurisdiction only if a timely appeal has been taken from an appealable order or judgment. (*Reyes v. Kruger* (2020) 55 Cal.App.5th 58, 67; *Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1454 [" 'A timely notice of appeal vests jurisdiction in the Court of Appeal.' "].)

1. *We Lack Jurisdiction to Review the January Dismissal Order*

The signed January dismissal order—which sustained the demurrer without leave to amend, dismissed the case in its entirety, and left no causes of action remaining for adjudication—operated as a final and appealable judgment. That is true, irrespective of whether the trial court labeled it a

---

[5] New Residential did not file a respondent's brief. We do not consider its failure to file a respondent's brief as an admission of error. Rather, we examine the record based on the arguments of the other parties to determine whether reversal is required. (*In re Marriage of Rifkin & Carty* (2015) 234 Cal.App.4th 1339, 1342, fn. 1; Cal. Rules of Court, rule 8.220(a)(2) (subsequent references to Rules are to the California Rules of Court).)

dismissal "with prejudice," or a dismissal "without prejudice." (Code Civ. Proc., § 904.1, subd. (a)(1) [an appeal may be taken from "a judgment, except an interlocutory judgment"]; see *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1104 [" 'claims that are dismissed without prejudice are no less final for purposes of the one final judgment rule than are adjudicated claims' "], quoting *Abatti v. Imperial Irrigation Dist.* (2012) 205 Cal.App.4th 650, 665; *Davis v. Southern California Edison Co.* (2015) 236 Cal.App.4th 619, 622, fn. 3 [a dismissal without prejudice is appealable if it is made by the court without agreement by the parties as to future litigation or waiver of the statute of limitations]; *Topa Ins. Co. v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1336 [dismissal without prejudice "represent[ed] a final judicial determination of [cross-claimant's] rights against [cross-defendant]".) Thus, it is clear the Moreiras appealed from a final and appealable judgment.

However, the parties dispute whether the Moreiras' appeal from the January dismissal order was timely. Generally, "a notice of appeal must be filed on or before the earliest of: [¶] (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment." (Rule 8.104(a)(1).)

The court issued the January dismissal order on January 28, 2022, and MERS, Shellpoint, and New Residential served the Moreiras a notice of entry of the January dismissal order on February 3, 2022. Thus, by default, the Moreiras had 60 days, from February 3, 2022, to appeal the dismissal order—

10

i.e., they had until April 4, 2022, to appeal. The Moreiras did not file their notice of appeal until August 1, 2022. Therefore, the appeal was untimely, unless the deadline to appeal was extended until on or after August 1, 2022.

The Moreiras argue their appeal from the January dismissal order was timely because they filed a motion to vacate the January dismissal order, which extended their deadline to appeal. The Moreiras are correct that their deadline to appeal from the January dismissal order was extended; however, even with the extension, the appeal from the dismissal order was untimely.

"If, within the time prescribed by rule 8.104 to appeal from the judgment, any party serves and files a valid notice of intention to move—or a valid motion—to vacate the judgment, the time to appeal from the judgment is extended for all parties until the earliest of: [¶] (1) 30 days after the superior court clerk or a party serves an order denying the motion or a notice of entry of that order; [¶] (2) 90 days after the first notice of intention to move—or motion—is filed; or [¶] (3) 180 days after entry of judgment." (Rule 8.108(c).) "A motion to set aside a judgment under section 473 qualifies as ... a motion [to vacate] for purposes of extending the time to file a notice of appeal." (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 108.)

The Moreiras timely filed their motion to vacate the January dismissal order on February 17, 2022. This filing extended the deadline to appeal the dismissal order from April 4, 2022, until the earliest of the three dates contemplated by Rule 8.108(c). In this case, the earliest date envisioned by Rule 8.108(c) was 90 days after the Moreiras filed their motion to vacate—

11

i.e., May 18, 2022. Because the Moreiras did not file their notice of appeal until August 1, 2022, their appeal from the dismissal order was untimely.[6]

The Moreiras' appellate briefs are not always comprehensible and their arguments are at times difficult to discern. However, they appear to suggest in their reply brief that their deadline to appeal from the January dismissal order was extended a second time because the trial court's nunc proc tunc amendment effected a substantial modification of the dismissal order. We are not convinced the nunc pro tunc amendment had this effect.

" 'When the trial court amends a nonfinal judgment in a manner amounting to a *substantial modification* of the judgment (e.g., on motion for new trial or motion to vacate and enter different judgment), the amended judgment supersedes the original and becomes the appealable judgment (there can only be *one* "final judgment" in an action ...). Therefore, a new appeal period starts to run from notice of entry or entry of the *amended* judgment.' " (*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222.) However, if the trial court's amendment does not constitute a substantial modification of the judgment, "any changes are considered to relate back to the original judgment and the time to appeal runs from the entry of the first judgment." (*Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842 (*Ellis*).)

To determine whether an amended judgment implements a substantial modification, thus superseding the original judgment and restarting the clock on a party's deadline to appeal the judgment, we must decide "whether there [was] a substantial change in the rights of the parties such that allowing an amendment nunc pro tunc (relating back to the original judgment) would

---

6    The Moreiras' appeal would have been untimely even if the filing deadline had been extended until 180 days after the trial court entered the January dismissal order—i.e., until July 27, 2022.

12

unfairly deprive them of the right to contest [an] issue [from the original judgment] on appeal or otherwise." (*Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 506–507.)  Stated differently, "it is ultimately the parties' ability to challenge [a] ruling that is key.  The right we are concerned with materially affecting is the right to appeal." (*Id.* at p. 508; see also *Millview County Water Dist. v. State Water Resources Control Bd.* (2019) 32 Cal.App.5th 585, 595 ["the question is whether the modification ' "materially affected" ' the appealing party's rights"].)

"So, for example, in *Dakota Payphone*, the trial court modified [a] default judgment to strike the portion of the damages award that was in excess of the damages requested in the complaint.  [Citation.]  While the result reduced the award by over $4 million, the Court of Appeal noted that the real issue was not the size of the award, but whether the defendant's right to appeal was affected by the amendment, and concluded that it was not, stating that '[t]hough the monetary positions of the litigants have been changed, in doing so the trial court did not deprive the parties of their ability to challenge any portion of the judgment.'  [Citation.]  In other words, if 'a party can obtain the desired relief from a judgment before it is amended, he must act—appeal therefrom—within the time allowed after its entry.' " (*Ellis, supra*, 235 Cal.App.4th at p. 843.)

Applying these principles here, the trial court's nunc pro tunc amendment changing the dismissal of the case from "without prejudice," to "with prejudice," did not materially affect the Moreiras' ability to challenge the January dismissal order.  As we have already discussed, the January dismissal order sustained the demurrer without leave to amend on numerous independent grounds, dismissed the case in its entirety, and resolved all of

13

the causes of action pending between the parties.[7] The Moreiras could have appealed the January dismissal order immediately after the court issued it on January 28, 2022, but they did not do so. Because the nunc pro tunc amendment did not impact the Moreiras' ability to challenge any of the rulings from the January dismissal order, we conclude the nunc pro tunc amendment did not constitute a substantial change in the parties' rights.

Because the Moreiras did not file a timely notice of appeal from the January dismissal order, we dismiss the appeal insofar as it is taken from the January dismissal order. (Rule 8.104(b) ["If a notice of appeal is filed late, the reviewing court must dismiss the appeal."].)

2. *We Have Jurisdiction to Review the Motion to Vacate Order*

The Moreiras not only purport to appeal from the January dismissal order, but also from the order denying their motion to vacate the January dismissal order. Unlike the January dismissal order itself, we have jurisdiction to review the order denying the motion to vacate.

The trial court issued the January dismissal order on January 28, 2022, and it issued the nunc pro tunc amendment and the order denying the motion

---

7       Because the trial court sustained the demurrer *without leave to amend* on numerous independent and seemingly incurable grounds, we can reasonably infer that the court dismissed the case *with prejudice* on January 28, 2022, but—due to an apparent clerical error it later corrected by way of a nunc pro tunc amendment—it mistakenly memorialized the dismissal in the written January dismissal order as a dismissal *without prejudice*. (See *Berri v. Superior Court* (1955) 43 Cal.2d 856, 859 ["where there has been a judgment of dismissal after demurrer sustained without leave to amend ... the action is finally terminated by the judgment because there is no longer any pending undetermined action"]; see also *Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396 [an "order sustaining [a] demurrer to ... [a] [c]omplaint without leave to amend effectively end[s] plaintiffs' ability to proceed further with their case .... The only step left to make the order appealable [is] the formal entry of a dismissal order or judgment."].)

14

to vacate on July 29, 2022.  The January dismissal order was a final and appealable judgment, as previously discussed.  The order denying the motion to vacate was a separately appealable order entered after a final judgment. (Code Civ. Proc., § 904.1, subd. (a)(2); *Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1394.)

The defendants argue we do not have jurisdiction to consider the order denying the motion to vacate because the Moreiras did not specify in their notice of appeal that they intended to appeal from the vacatur order. Specifically, the Moreiras marked a checkbox on their notice of appeal form indicating they were appealing from a "Judgment of dismissal after an order sustaining a demurrer," but they did not mark a checkbox on the same form indicating they were appealing from an "order after judgment under Code of Civil Procedure, § 904.1(a)(2)[.]"  " ' "[W]here several judgments and/or orders occurring close in time are separately appealable ... each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal." ' " (*Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1171.)

We agree with the defendants that, for the sake of clarity, the Moreiras should have marked both checkboxes on their notice of appeal form and/or explicitly stated that they were appealing from both the January dismissal order and the order denying their motion to vacate.  However, Rule 8.100(a)(2) provides that "[t]he notice of appeal must be liberally construed." "Rule 8.100(a)(2)'s liberal construction requirement reflects the long-standing ' "law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' [Citations.]  The rule is intended to 'implement the

15

strong public policy favoring the hearing of appeals on the merits.' " (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882.)

Although the Moreiras did not check the correct checkbox on the notice of appeal form indicating they were appealing from a post-judgment order, they stated on their notice of appeal form that they were appealing from judgments or orders entered on both "1-28-22 amended 7-29-22," *and* "7-29-22," which correspond with the dates the trial court entered and amended the January dismissal order and denied the motion to vacate, respectively.  The Moreiras included the order denying their motion to vacate as an attachment to the notice of appeal form as well.  Further, the defendants do not argue that any purported ambiguity in the notice of appeal misled or prejudiced them.

Because the notice of appeal lists the specific date on which the court entered the vacatur order, and includes the vacatur order as an attachment, we construe the notice of appeal liberally to encompass the order denying the motion to vacate.  The Moreiras filed their notice of appeal from the vacatur order in a timely manner.  Thus, we have appellate jurisdiction to review the order denying the motion to vacate the January dismissal order.

B. *The Trial Court Properly Denied the Motion to Vacate*

Although we side with the Moreiras on the question of whether we have jurisdiction to consider the vacatur order, we reject the Moreiras' claim that the trial court entered the January dismissal order in error.

The Moreiras moved to vacate the January dismissal order under the mandatory relief provisions of Code of Civil Procedure section 473.  Those provisions state, in part, that "the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or

16

her mistake, inadvertence, surprise, or neglect, vacate any ... resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (Code Civ. Proc., § 473, subd. (b).) "The general underlying purpose of section 473(b) is to promote the determination of actions on their merits." (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 839.)

"We review an order granting or denying relief under section 473(b) ... under the abuse of discretion standard." (*Shapell Socal Rental Properties, LLC v. Chico's FAS, Inc.* (2002) 85 Cal.App.5th 198, 212.) "Where the facts are in dispute as to whether or not the prerequisites of the mandatory relief provision of section 473, subdivision (b), have been met, we review the record to determine whether substantial evidence supports the trial court's findings." (*Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 399.)

The Moreiras moved to vacate the January dismissal order on grounds that their counsel, Ronald H. Freshman, failed to calendar the correct deadline for their opposition to the demurrer, which caused them to file their opposition in an untimely manner. The trial court denied the motion to vacate, finding the Moreiras' failure to file a timely opposition was not the cause of the demurrer ruling and the dismissal order.

In light of these causation findings, the trial court properly denied the motion to vacate because the demurrer ruling and related dismissal order were "not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (Code Civ. Proc., § 473, subd. (b).) In short, Mr. Freshman's calendaring error "did not deprive [the Moreiras] of [their] ' "day in court." ' " (*Hernandez v. FCA US LLC* (2020) 50 Cal.App.5th 329, 338.) "This case was

17

not a default but rather a motion lost, on its merits, after opposition was filed.  Section 473 was not meant to apply to these facts." (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 684; see, e.g., *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 621 [vacatur unwarranted because "Plaintiffs' attorney's conduct did not deprive them of their 'day in court' in opposition to the demurrers"]; *Darab Cody N. v. Olivera* (2019) 31 Cal.App.5th 1134, 1140 ["Code of Civil Procedure section 473, subdivision (b)'s mandatory provision is only mandatory 'unless the [trial] court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.'  Here, the trial court found exactly that, and did not abuse its discretion in so doing."].)

On appeal, the Moreiras dispute the court's causation findings, arguing the January dismissal order conclusively shows the court based its demurrer ruling on the Moreiras' failure to file a timely opposition.  We disagree.  Far from proving the Moreiras' argument, the January dismissal order, on its face, strongly supports the court's causation findings.  The dismissal order is six pages in length.  It analyzes every one of the Moreiras' causes of action on the merits, sustaining the demurrer to each claim for numerous independent reasons.  It references the Moreiras' opposition only once, briefly and obliquely stating, "There has been no opposition to support a basis to give leave to amend.  This case is dismissed."  It is reasonable to conclude the court simply meant to convey that the Moreiras' as-filed opposition did not persuade the court to grant leave to amend; it does not invariably mean the court failed to consider the opposition altogether due to its untimeliness.

Moreover, other factors persuade us that the trial court's well-supported causation findings were correct.  As the defendants note, the court did not strike the Moreiras' opposition, as one would expect if the court had

18

been inclined to reject the filing in its entirety based on its untimeliness. Further, as all parties agree, the Moreiras' counsel appeared at the demurrer hearing and presented substantive arguments on behalf of his clients.[8]  For these additional reasons, we conclude the Moreiras have failed to establish that the trial court's causation findings were erroneous or that the court erred in denying their motion to vacate the January dismissal order.

IV

DISPOSITION

The appeal is dismissed insofar as appellants purport to appeal from the order sustaining the demurrer without leave to amend and dismissing the case.  The order denying the motion to vacate is affirmed.  Respondents are entitled to their costs on appeal.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

DATO, J.

---

[8]     There is no reporter's transcript from the demurrer hearing or the hearing on the Moreiras' motion to vacate the January dismissal order.

19